```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


DELMON MARZETT                              CIVIL ACTION

VERSUS                                      NO: 11-2264

R. BROWN, ET AL.                            SECTION: "A" (3)
```

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 42)** filed by defendants Marlin N. Gusman, Sheriff of New Orleans, Major Brown, Lieutenant Dorsey, and Deputy James Fried. Plaintiff Delmon Marzett opposes the motion. The motion, scheduled for submission on August 15, 2012, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

### I.   BACKGROUND

Plaintiff Delmon Marzett is a prisoner housed at the Orleans Parish Prison ("OPP"), Conchetta and/or House of Detention.[1] Marzett filed this lawsuit pro se seeking to recover under 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights. Marzett asserts two separate claims arising

---

[1] Orleans Parish Prison includes several correctional facilities, all under the ultimate control and authority of Sheriff Marlin Gusman. Defendants' motion for summary judgment states that Marzett was housed in the House of Detention facility but Marzett's hand-written Statement of Claim states that he was housed in the Conchetta facility when at least some of the events giving rise to this lawsuit occurred.

out of his confinement at OPP.  First, Marzett complains that while housed in Conchetta, he was deprived of his freedom to practice his Muslim religion.  Second, Marzett complains that on July 12, 2011, after returning from court, he and about two dozen other inmates were as a group subjected to a strip search by an allegedly gay male deputy.  Marzett seeks to recover $250,000.00 for mental/emotional pain and suffering for each of his claims. (Rec. Doc. 1, at 6).  The specifics of each of these claims will be discussed in greater detail later in this opinion.

Defendants now move for summary judgment arguing that 1) Marzett's right to freedom of religion was not violated because he has not been barred from practicing his religion and because deference is owed to prison officials to determine a prisoner's ability to observe religious practices, 2) the strip search was not unconstitutional because of the compelling interest in prison security, 3) Marzett cannot recover for solely emotional injury absent physical injury, and 4) Sheriff Gusman cannot be liable because Marzett does not allege that Gusman was personally involved in the acts at issue and respondeat superior does not provide a basis for liability.

This matter is scheduled to be tried to a jury on January 22, 2013.

**II.   DISCUSSION**

Summary judgment is appropriate only if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### 1) *Validity of the Religious Restrictions*

The First Amendment provides that "Congress shall make no law respecting an establishment of religion or prohibiting the

free exercise thereof." The First Amendment's free exercise clause applies to the states via the Fourteenth Amendment. School Dist. of Abington v. Schempp, 374 U.S. 203, 215 (1963) (citing Cantwell v. Conn., 310 U.S. 296, 303 (1940)).

Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). Inmates retain their First Amendment right to the free exercise of religion.[2] McFaul v. Valenzuela, 684 F.3d 564, 571-

---

[2] The complaint of a pro se prisoner is held to a less stringent standard than formal pleadings drafted by lawyers. Neal v. State of Ga., 469 F.2d 446, 448 (5th Cir. 1973) (quoting Haines v. Kerner, 404 U.S. 519 (1972)). Therefore, the Court must give Marzett's complaint a liberal reading. The facts pled in conjunction with Marzett's claim for free exercise of religion unarguably implicate the First Amendment. Marzett did not expressly invoke the First Amendment in his complaint although he has attempted during the course of this litigation to invoke other constitutional amendments by name, e.g., the Fourth and Fourteenth Amendments. Nonetheless, Marzett cannot be held to the same standards of legal acumen that one would expect of an attorney. It suffices for purposes of this action that Marzett has pled the specific facts that demonstrate a potential violation of his First Amendment rights, see Neal, 469 F.2d at 448-49, and Defendants' briefing demonstrates that this is the claim that they understood Marzett to have pled.
    Marzett did not invoke the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq., which might also be implicated under the facts. The RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc-1(a) (West 2003). The Act applies to prisons, jails, and correctional facilities of a

72 (5th Cir. 2012) (quoting Hicks v. Garner, 69 F.3d 22, 25 (5th Cir. 1995)). The right is not absolute, however, as it is subject to reasonable restrictions and limitations necessitated by penological goals. Id. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives, including deterrence of crime, rehabilitation of prisoners, and institutional security. O'Lone, 482 U.S. at 348 (citing Pell v. Procunier, 417 U.S. 817,

---

political subdivision of the state, 42 U.S.C.A. § 1997(1)(A),(B)(ii), so long as the facility receives federal financial assistance, 42 U.S.C. § 2000cc-1(b)(1).

It is unclear whether a liberal reading of Marzett's pro se complaint would require the Court to assume that Marzett is pursuing a statutory claim under the RLUIPA. See Greenup v. Gusman, No. 09-6677, 2010 WL 1410676, at *1 n.1 (E.D. La. Mar. 26, 2010). But as a practical matter, a claim under the Act would not provide any greater relief to Marzett than his § 1983 claim.

The Act may or may not include actors in their personal capacities, see 42 U.S.C. § 2000cc-2(a); § 2000cc-5(4)(A)(iii); Smith v. Allen, 205 F.3d 1255, 1272-73 (5th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 131 S. Ct. 1651 (2011); Mayfield v. Tex. Dep't of Crim. Justice, 529 F.3d 599, 606 n.8 (5th Cir. 2008), and it does not relieve the prisoner of any of the damages recovery restrictions imposed by the Prison Litigation Reform Act, 42 U.S.C. § 1997e. See 42 U.S.C. § 2000cc-2(e); Mayfield, 529 F.3d at 605-06. If the Act even applies in this case, perhaps its most significant impact would be on the apportioning of the burdens of persuasion, see id. § 2000cc-2(b) ("If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause . . ., the government shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion."). RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prisoner officials to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates. Mayfield, 529 F.3d at 612.

5

822-23 (1974); Procunier v. Martinez, 416 U.S. 396, 412 (1974)).

A restriction "impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'"  McFaul, 684 F.3d at 571-72 (quoting Florence v. Bd. of Chosen Freeholders, 132 S. Ct. 1510, 1515 (2012)).  This approach ensures the ability of corrections officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration," and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to "resolution by decree."  O'Lone, 482 U.S. at 349-50 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987); Martinez, 416 U.S. at 405).

To evaluate the reasonableness of a prison restriction that affects the free exercise of religion, the court considers 1) whether the regulation or action has a logical connection to the legitimate governmental interests invoked to justify it; 2) whether the inmate has an available alternative means of exercising the rights; 3) the impact of accommodation on other inmates, guards, and prison resources; and 4) the presence or absence of ready alternatives that fully accommodate the prisoner's "rights at *de minimis* cost to valid penological interests."  McFaul, 684 F.3d at 572 (quoting Turner, 482 U.S. at 78).  To determine whether there is an alternative way for the prisoner to exercise his right to practice his religion, courts

consider "whether the regulation entirely stifles the prisoner's religious expression." Id. (quoting Scott v. Miss. Dep't of Corr., 961 F.2d 77, 81 (5th Cir. 1992)).

In assessing whether the restriction is reasonable, the court must determine whether the government objective underlying the restriction at issue is legitimate and neutral, and that the restriction is rationally related to that objective. McFaul, 684 F.3d at 572 (quoting Freeman v. TDCJ, 369 F.3d 854, 860 (5th Cir. 2004)). The court must be mindful that prison administrators and not judges are tasked with making the difficult judgments concerning institutional operations. Id. (quoting Turner, 482 U.S. at 89). Therefore, due deference must be given to the decisions of prison officials "who are actually charged with and trained in the running of the particular institution under examination. O'Lone, 482 U.S. at 349 (quoting Bell v. Wolfish, 441 U.S. 520, 562 (1979); McFaul, 684 F.3d at 572 (quoting Turner, 482 U.S. at 89).

Turning now to the instant case, Defendants contend that summary judgment is appropriate because Marzett does not claim that he is completely disallowed from practicing his religion. Rather, according to Defendants, he merely asserts that his observance of certain religious practices has been restricted due to his incarceration. Defendants argue that Supreme Court jurisprudence mandates deference to prison officials when

7

restricting inmates' religious practices due to security and safety concerns.  (Rec. Doc. 42-1, at 11).

Defendants are reading Marzett's complaint far too narrowly and their motion for summary judgment paints with far too broad a brush.  Marzett claims that OPP does not allow the Muslim population to congregate for the Friday Jumu'ah service that Muslims traditionally observe, that no imam[3] is available for him (and that two specific imams were put on a terrorist list), that no Islamic material is available to him although the Christians, Jehovah's witnesses, and Catholics have bibles and other religious materials given to them for free while Muslims must buy their own Qur'an.  Marzett contends that after bringing various grievances about this, he finally purchased his own Islamic materials and books but when they arrived prison officials refused to release them to him.  Marzett claims that he was denied the materials because of 9-11 and terrorism and because the books were considered hate material by prison officials.[4]

---

[3] An imam is a leader in the Muslim community who will often lead Islamic worship services at a Mosque and provide religious guidance to Muslims.

[4] One of the Islamic materials mentioned in the complaint is the Final Call newspaper.  (Rec. Doc. 1, at 7).  This particular publication was the subject of litigation in the Western District of Louisiana, and on appeal the Fifth Circuit upheld the district court's decision that the prison violated the inmate's rights by banning the paper in its entirety.  Leonard v. State of Louisiana, Dep't of Pub. Saf. & Corr., 449 Fed. Appx. 386 (5th Cir. 2011) (unpublished).

In his declaration Marzett states that it was defendant

8

Marzett complains that the prison chaplain and the commissary carry no Islamic materials.

As the Court construes Marzett's complaint and opposition, he is claiming that prison officials at OPP are completely stifling the observance of his Islamic faith, not merely restricting some of his practices. (Rec. Doc. 52, at 12). Moreover, he claims that this is being done in a discriminatory or "non-neutral" manner which impugns all Muslims based on the 9-11 terror attacks. Whether Marzett's claims are true or false or misleadingly overblown the Court cannot say because Defendants offered no affidavits or any evidence whatsoever in support of their motion for summary judgment. Instead, they state in conclusory fashion that Marzett "was not prohibited from practicing his religion" while incarcerated at OPP." (Rec. Doc. 42-2, ¶ 2). This statement, which is listed as an uncontested material fact, is by no means "uncontested" on the current record.

Defendants' sole defense to the claims at issue and their sole support for their motion for summary judgment is their contention that as prison officials they are owed significant deference in the running of the prison. Defendants are of course correct because the Supreme Court jurisprudence regarding

---

Major Brown, one of the OPP wardens, who denied Marzett access to Islamic materials after calling them 9-11 hate material. (Rec. Doc.52-1, at 1).

prisoners' rights emphasizes the role of prison administrators. E.g., O'Lone, 482 U.S. at 342.  And Marzett, who has demonstrated via his filings a significant understanding of the legal issues involved in his case, surely understands that the constitution does not require OPP to allow him the freedom necessary to observe every aspect of his Muslim faith.  See id.  In other words, at the end of the day it may very well be that OPP has done nothing wrong.  But the Court has no basis in the record upon which to evaluate whether the complained of restrictions are reasonably related to legitimate penological interests, whether the restrictions are reasonable, how the Turner factors balance out, whether they are applied neutrally, and whether Marzett retains an alternative means to observe his Muslim faith.  In fact, the Court is not even sure of what OPP's "restrictions" are in this area.

Marzett's side of the story is that he has no alternative means to observe his faith and that the basis for any restrictions is discrimination against Muslims by certain prison officials who believe that all materials related to the Muslim faith are 9-11 hate material.  As the record stands now, Marzett's contentions remain uncontradicted by any evidence in the record so  Defendants cannot obtain summary judgment on Marzett's First Amendment claims by relying upon rote citations to principles of deference to prison officials.  Defendants'

10

motion for summary judgment is therefore DENIED as to the free exercise of religion claims.

### 2) *Validity of the Strip Search*

For purposes of evaluating the validity of the strip search that occurred in this case, the Court has the benefit of the very recent Supreme Court decision of <u>Florence v. Board of Chosen Freeholders of the County of Burlington</u>, 132 S. Ct. 1510 (2012). In <u>Florence</u>, the Court upheld a jail's policy of strip searching new detainees who are held in the jail's general population area while their cases are being processed.  <u>Id.</u> at 1523.  In reaching its decision the Court reiterated its long-held belief that corrections officials are due deference when trying to deal with the inherent difficulties of running a detention center including keeping contraband out of the jail.  <u>Id.</u> at 1515-16.  There is no mechanical way to determine whether intrusions into an inmate's privacy are reasonable.  <u>Id.</u> (<u>citing</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979)).  The need for a particular search must be balanced against the resulting invasion of personal rights.  <u>Id.</u>  The Court was persuaded that the jail in that case had struck a reasonable balance between inmate privacy and the needs of the institution.  <u>Id.</u> at 1523.

In this case Marzett complains that on July 12, 2011, after returning from court, he and about two dozen other inmates were as a group subjected to a strip search by an allegedly gay male

11

deputy.  Marzett contends that each prisoner was required to manipulate his genitals in the presence of the guards and to bend over and spread his buttocks for visual inspection.[5]  According to Marzett, this search is distinguishable from those that have been upheld in cases like Bell v. Wolfish because in this case a group of inmates was subjected to the search in a very cramped holding cell for the pleasure of two allegedly homosexual or bi-sexual male deputies.  Marzett argues that a strip search was not necessary because metal detectors or other methods of detection could have been used.[6]

    Although the facts surrounding the strip search are sparse, the Court concludes as a matter of law that Marzett cannot establish that the search was unreasonable.  Even though there is no basis for individualized suspicion or probable cause, the law does not necessarily require that.  Marzett was not pulled out of his cell and strip searched for the entertainment of the guards

---

[5] Marzett's pleadings present a more graphic description of the search that the Court need not recite the details here.  The details of the search that Marzett describes are similar to the strip search that was upheld in Bell v. Wolfish, 441 U.S. at 558-59.

[6] Marzett also complains that by conducting the strip search the defendants violated jail policy.  (Rec. Doc. 52, at 2).  Violations of the jail's own internal policies are not redressible by this Court unless they rise to the level of a constitutional violation.  Marzett also takes great pains to convince the Court that he was transferred to other facilities within OPP after he complained about the strip search.  Marzett characterizes these transfers as retaliatory in nature.

on duty. Marzett was searched upon returning to the jail from a trip outside of the facility where he could very well have obtained contraband to bring back into the jail.[7] In <u>Florence</u> the Supreme Court discussed at length the methods that inmates often use to conceal contraband in body cavities. 132 S. Ct. at 1520-22. There is no suggestion that Marzett was not returned to the jail's general population where he then would have had contact with other inmates. Metal detectors are not necessarily effective for detecting contraband such as cash and drugs and therefore do not necessarily present a viable alternative.

To be sure, the law does not hold that strip searches in a facility such as OPP are per se valid, presumed valid, or valid when performed at the whim of prison officials. But in light of the deference due to prison officials who face the difficult task of keeping contraband out of the facility, and in light of the facts surrounding this particular strip search, the Court is persuaded that Marzett does not state a claim for a constitutional violation. The motion for summary judgment is therefore GRANTED as to the strip search claim.

### 3) *Recovery for Emotional Injury*

Defendants move for dismissal of Marzett's claims for compensatory damages. Defendants argue that Marzett has no

---

[7] The Court recognizes that Marzett had left the jail to go to court where one would hope that he was properly supervised so that he could not obtain contraband but there are no guarantees.

alleged physical injuries and that he is therefore statutorily precluded from recovering for solely emotional or mental injuries.

The Prison Litigation Reform Act ("PLRA") provides that ""[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. § 1997e(e) (West 2003). A prisoner can, however, pursue punitive or nominal damages based on a violation of his constitutional rights. Mayfield, 529 F.3d at 606.

In this case Marzett has not alleged physical injuries of any kind as a result of the incidents giving rise to this lawsuit so he cannot recover the emotional injury damages that he seeks. Nominal damages remain a possibility[8] and Marzett makes an ambiguous reference to punitive damages in his complaint. But compensatory damages are clearly precluded by the PLRA. The motion for summary judgment is therefore GRANTED as to the claim for mental/emotional damages.

### 4) *Claims Against Sheriff Gusman*

Sheriff Gusman argues that even under a broad reading of Marzett's complaint it is clear that Marzett is attempting to

---

[8] The Court notes that in the Henry Leonard matter, nominal damages in the amount of $1.00 per defendant were awarded. See note 4, supra.

hold Sheriff Gusman liable solely because he is a supervisory official. Gusman points out that under the law he is not liable for the constitutional torts of his employees and that the complaint alleges no facts to suggest that he was personally involved in any of the incidents at issue in this case.

In his opposition, Marzett explains how he believes Sheriff Gusman was personally involved in the incidents at issue. Marzett contends that Gusman is the one who put two imams on a terrorist list and that he was aware that the strip searches were illegal because OPP had recently settled a class action on this issue. (Rec. Doc. 52 at 4-5).

Defendant Sheriff Gusman is the elected Sheriff of Orleans Parish with overall responsibility for the policies, procedures, operations, and supervision of the Orleans Parish Prison. Sheriff Gusman unarguably is the final policy maker for the Orleans Parish Prison. Clearly, if Marzett's complaints are ultimately determined to be constitutional violations, then if it is determined that the individual guards pursued a course of conduct pursuant to a policy promulgated by Gusman, then Sheriff Gusman may potentially be liable notwithstanding that the doctrine of respondeat superior has no application in § 1983 litigation. At this stage, however, when it is not even clear to the Court what particular policies, if any, of Sheriff Gusman are involved in this case, summary judgment for Sheriff Gusman must

15

be DENIED.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 42)** filed by defendants Marlin N. Gusman, Sheriff of New Orleans, Major Brown, Lieutenant Dorsey, and Deputy James Fried is **GRANTED IN PART AND DENIED IN PART** as explained above.

September 26, 2012

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE